# United States Court of Appeals
## For the First Circuit

No. 03-1715

HASEEB SULTAN SYED,

Petitioner,

v.

JOHN ASHCROFT,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge, and
Lipez, Circuit Judge.

James P. Duggan for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Mary Jane Candaux, Senior Litigation Counsel, Office of Immigration
Litigation, and James E. Grimes, Attorney, Office of Immigration
Litigation, for respondent.

November 23, 2004

**LIPEZ**, **Circuit Judge**.  Petitioner Haseeb Sultan Syed challenges a finding by an Immigration Judge, affirmed by the Board of Immigration Appeals, that he entered into his first marriage for the sole purpose of obtaining an immigration benefit and is thus ineligible for an adjustment of status to that of lawful permanent resident on the basis of his subsequent marriage.  For the reasons set forth below, we affirm.

## I.

Haseeb Sultan Syed (Syed), a citizen of Pakistan, entered the United States on February 15, 1994 with permission to remain until February 19, 1994.  He stayed in the country past this deadline, marrying Carmen Hiraldo (Hiraldo), a United States citizen, on May 13, 1994.  Hiraldo filed a visa petition for Syed, which was approved in October 1994, and Syed applied to adjust his status to that of lawful permanent resident based on the visa.

Hiraldo subsequently withdrew her visa petition in January 1995, claiming that she and Syed had never lived together.  Accordingly, on February 13, 1995, the INS[1] denied Syed's petition for an adjustment of status and instituted deportation proceedings on the grounds that he was an alien who sought to procure immigration benefits through fraud, 8 U.S.C. § 1251(a)(1)(A)

_____

[1]In March 2003, the relevant functions of the INS were transferred to the Department of Homeland Security and reorganized as the Bureau of Immigration and Customs Enforcement ("BICE").  For simplicity we refer to the agency throughout this opinion as the INS.

-2-

(1994);[2] 8 U.S.C. § 1182(a)(6)(C)(1), and that he had remained in the United States longer than permitted, 8 U.S.C. § 1251(a)(1)(B) (1994).

In hearings before an Immigration Judge (IJ) between 1995 and 1997, Syed offered testimonial and documentary evidence alleging that he and Hiraldo had enjoyed a bona fide marriage prior to their divorce in August 1995. The IJ rejected this evidence, concluding that Syed's testimony "lack[ed] the ring of truth." The IJ also questioned whether photographs that Syed presented as evidence of the marriage had been staged.[3] On September 15, 1997, the IJ issued a decision finding that Syed had remained in the United States longer than permitted and had entered into marriage solely to gain an immigration benefit. The IJ ordered Syed deported and denied his request for voluntary departure. Syed then appealed to the Board of Immigration Appeals (BIA).

While Syed's appeal to the BIA was pending, his second wife, Fatima Gill Syed (whom he married less than one month after his divorce from Hiraldo), filed an immediate relative visa

---

[2]The relevant provisions of 8 U.S.C. § 1251 were transferred to 8 U.S.C. § 1227 on September 30, 1996. Pub. L. No. 104-208, 110 Stat. 3009-598.

[3]The photographs that Syed submitted included images of his wedding to Hiraldo at City Hall in May 1994, of the couple dining with Syed's mother at his apartment, and of Hiraldo's purported birthday celebration in December 1994, also at his apartment. The IJ viewed these pictures with skepticism, noting that Syed wore the same clothing in pictures purportedly taken on different days.

petition on his behalf. The INS approved the visa in September 1998, and Syed subsequently requested that the BIA remand his case to allow him to apply for an adjustment of status based on the visa. The BIA granted Syed's motion on March 6, 2000, remanding the case to the IJ to consider whether Syed was eligible to adjust his status and with instructions that Syed be given a further opportunity to present evidence that his first marriage was bona fide.

On remand, the IJ found that Syed was ineligible for an adjustment of status because of his previous fraudulent marriage and that the INS should not have approved the immediate relative visa petition because Syed had "previously . . . sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c)(1). However, the IJ certified the question of whether Syed's first marriage was fraudulent to the BIA pursuant to Syed's previously filed appeal.

The BIA affirmed both the IJ's September 1997 conclusion that Syed's first marriage was fraudulent and the IJ's December 2000 conclusion that Syed was ineligible for a status adjustment on this basis.

Syed now appeals.  He does not dispute that a fraudulent first marriage would render him ineligible for an adjustment of status.  Rather, his appeal is based solely on the claim that the IJ and BIA erroneously concluded that he entered into his first marriage for the purpose of obtaining immigration benefits.

## II.

Our review of factual findings and credibility determinations by an IJ is deferential.  Mendes v. INS, 197 F.3d 6, 13 (1st Cir. 1999); Alvarez-Flores v. INS, 909 F.2d 1, 3 (1st Cir. 1990).  We will uphold the BIA's affirmance of an IJ's decision so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotations and citation omitted).  In other words, to prevail, Syed must demonstrate that the evidence he presented was "'so compelling that no reasonable fact finder could fail' to find that he had a bona fide marriage."  Mendes, 197 F.3d at 13 (quoting Elias-Zacarias, 502 U.S. at 483-84).

## III.

The IJ's finding that Syed's first marriage was not bona fide rested on multiple grounds: that documents submitted on Syed's behalf were fraudulent, that Syed's own testimony was inconsistent and not credible, and that photographs Syed submitted appeared to have been staged.  Syed argues first that these conclusions were

erroneous, and second, that the judge incorrectly considered Hiraldo and Syed's subsequent divorce in assessing whether the marriage was fraudulent. We address each claim in turn.

Syed asserts that his marriage to Hiraldo was "based upon mutual attraction and romantic love," not immigration considerations. In support of this position, he reiterates that he "knew the particulars of [Hiraldo's] life" and refers to photographs that document their life together. The IJ did not consider these averments to be sufficient evidence of a bona fide marriage, particularly in view of the court's adverse credibility determination and its conclusion that the photographs were staged. Syed challenges both assessments, arguing that the IJ improperly dismissed the photographs as "not convincing" and "did not state any reasons for his determination that [Syed's] testimony was not credible." We are unpersuaded on both counts.

"Because the immigration judge is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given much weight." Estrada v. INS, 775 F.2d 1018, 1021 (9th Cir. 1985)(internal quotation marks omitted). Thus, we defer to an IJ's credibility finding so long as the IJ "offer[s] a specific, cogent reason for [his] disbelief." Mihaylov v. Ashcroft, 379 F.3d 15, 21 (1st Cir. 2004)(citing Qin v. Ashcroft, 360 F.3d 302, 306 (1st Cir. 2004)). Without such an explanation, we would be unable to conduct a proper review of the

IJ's decision. <u>Gailius</u> v. <u>INS</u>, 147 F.3d 34, 46-47 (1st Cir. 1998); <u>see</u> <u>also</u> <u>Mihaylov</u>, 379 F.3d at 20-21.

Here, despite Syed's protestations to the contrary, the IJ did offer a specific reason for the adverse credibility finding. Syed's status adjustment application included a letter, purportedly signed by a store manager, indicating that Hiraldo worked at a 7-Eleven store adjacent to Syed's apartment during their marriage. Syed asserted in a hearing before the IJ that Hiraldo submitted the letter without his knowledge. However, when Hiraldo withdrew the visa petition, she stated that she had never seen the letter; a witness also testified during the immigration proceedings that Hiraldo was unemployed while she and Syed were married. Based on this evidence, the IJ concluded that the letter was fraudulent and that Syed's disavowal of any responsibility for it undermined his credibility. Syed has not directly addressed this finding on appeal.

Although the IJ did not specify other bases for the credibility determination, it may well have been informed by the vagueness and inconsistency in Syed's testimony. The record reflects that Syed was unable to recall where he had proposed to Hiraldo and that he gave varying accounts of when they moved in together. In fact, the IJ noted that while Syed claimed that he and Hiraldo had lived together, Hiraldo asserted when she withdrew the visa petition that they had never lived together. Again, such

contradictory claims provide substantial evidence for the IJ's adverse credibility determination.

Syed also contests the IJ's finding that the photographs were not persuasive evidence of a bona fide marriage. Such a challenge, standing alone, is not a sufficient basis upon which to disturb the IJ's decision. The IJ noted that Syed wore the same clothes in several of the pictures purportedly taken on different days. The record also reflects that Syed's mother and Hiraldo were also wearing the same clothing, and appeared to be eating the same food, in multiple pictures that Syed claimed were taken on different occasions. Together, these factors provided substantial evidence for the IJ's conclusion that "[t]he photographs in themselves are not convincing evidence of the viability of the marriage."

Finally, Syed argues that the IJ improperly considered the fact that the marriage had dissolved after Hiraldo filed the visa petition. This position is based on the IJ's statement that "[t]here is no . . . evidence presented . . . to establish an ongoing conjugal relationship . . . ."

Syed correctly notes that subsequent separation does not, by itself, render a marriage invalid from its inception. See Bark v. INS, 511 F.2d 1200, 1202 (9th Cir. 1975) ("The inference that the parties never intended a bona fide marriage from proof of separation is arbitrary unless we are reasonably assured that it is

more probable than not that couples who separate after marriage never intended to live together."); see also Dabaghian v. Civiletti, 607 F.2d 868 (9th Cir. 1979) (similar).  But the IJ's decision did not state otherwise.  Although the reference to an "ongoing conjugal relationship" is potentially misleading, we do not read it to mean that Syed had to establish a presently ongoing relationship.  Rather, viewed in context, "ongoing" clearly referred to the period of time when Syed contends that he and Hiraldo enjoyed a bona fide marriage.  There is no evidence that the IJ considered the couple's separation in assessing the bona fides of their marriage, aside from Hiraldo's subsequent assertion that, in fact, she and Syed had never lived together at all.  This is not the type of impermissible inference from separation addressed in Bark; Hiraldo's explicit statement undermines both the validity of the marriage from its inception and the credibility of Syed's testimony to the contrary.

**Affirmed.**