# United States Court of Appeals
## For the First Circuit

---

No. 04-1437

AGNES CHO,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States

Respondent.[*]

---

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, Chief Judge,

Torruella, and Howard, Circuit Judges.

---

Ilana Greenstein with whom Harvey Kaplan, Jeremiah Friedman, Maureen O'Sullivan and Kaplan, O'Sullivan & Friedman, LLP were on brief, for petitioner.
Jamie M. Dowd, Attorney, Office of Immigration Litigation, Civil Division, with whom Peter D. Keisler, Assistant Attorney General, and David V. Bernal, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.
Iris Gomez, Massachusetts Law Reform Institute, and Gail Pendleton, National Immigration Project of the National Lawyers Guild, on brief for The Family Violence Prevention Fund,

---

[*]Alberto Gonzales was sworn in as United States Attorney General on February 3, 2005. We therefore have substituted Attorney General Gonzales for John Ashcroft as the respondent. See Fed. R. App. P. 43(c)(2).

Massachusetts Law Reform Institute, Inc., National Immigration Project of the National Lawyers Guild and Greater Boston Legal Services, <u>amici</u> <u>curiae</u>.

———————————

April 19, 2005

———————————

**HOWARD**, **Circuit Judge**.    Under the Immigration and Nationality Act, an alien who marries a United States citizen is entitled to petition for permanent residency on a conditional basis.  See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i) & (ii), and 1186a(a)(1).  Within 90 days of the second anniversary of the conditional admission, the couple (if the citizen is not deceased) may jointly petition for the removal of the condition.  See 8 U.S.C. §§ 1186a(c)(1)(A) & 216(d)(2)(A).  Each such petition is required to state, inter alia, that the marriage has not been judicially annulled or terminated, and that it was not entered into for the purpose of procuring the alien spouse's admission as an immigrant.  See 8 U.S.C. § 1186a(d)(1)(A)(i)(II) & (III).

If the couple has divorced within two years of the conditional admission, the alien spouse may still apply to the Attorney General to remove the conditional nature of her admission by granting a "hardship waiver."  8 U.S.C. § 1186a(c)(4).  Insofar as is relevant here, the statute authorizing the Attorney General to grant such applications provides:

> The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to meet the [conditions described above] if the alien demonstrates that . . .
>
> (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse)

-3-

and the alien was not at fault in failing to meet the [conditions described above] . . . .

In acting under applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General . . . .

8 U.S.C. § 1186a(c)(4)(B).

On September 15, 1997, petitioner Agnes Cho, a Chinese citizen of Burmese descent, married a United States citizen of Burmese descent. Subsequently, Cho secured conditional admission as a permanent United States resident. The couple divorced within two years of the marriage, and Cho applied to the Attorney General for a hardship waiver. But the Attorney General, acting first through an INS district director, then through an immigration judge, and finally through the Board of Immigration Appeals, denied Cho's application on the ground that she failed to establish that she had married in good faith and thus failed to establish eligibility for a hardship waiver. Cho petitions to vacate the order of removal that followed these determinations, arguing, inter alia, that the record lacks substantial evidence to support the Attorney General's ruling. The Attorney General responds that we lack jurisdiction to entertain this petition and, alternatively, that the removal order is grounded in substantial evidence.

We begin with the jurisdictional issue. The Attorney General argues that we lack power to consider the petition under a

-4-

permanent, jurisdiction-stripping statute enacted into law as part of the Immigration Reform and Immigrant Responsibility Act of 1996. In relevant part, the statute reads:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review --
>
>    (i) any judgment regarding the granting of relief under [certain statutory grants of discretionary authority to the Attorney General not here relevant], or
>
>    (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under [another statute not here relevant].

8 U.S.C. § 1252(a)(2)(B). The parties agree that the Attorney General's rejection of an application for a hardship waiver under 8 U.S.C. § 1186a(c)(4)(B) is a decision made pursuant to the relevant statutory "subchapter" mentioned in subparagraph (ii). They also agree that the Attorney General's general authority to grant a hardship waiver under § 1186a(c)(4)(B) is specified to be within the Attorney General's discretion. But they disagree over whether these two facts resolve the jurisdictional issue.

The Attorney General says that they do. He primarily argues that the "decision or action" referred to in 8 U.S.C. § 1252(a)(2)(B)(ii) is his final order, which he says is his denial of the hardship waiver, and not the threshold eligibility ruling -- that Cho failed to prove that she married in good faith -- on which that order was based. And because this "decision or action"

-5-

involves the withholding of discretionary relief, the argument goes, we have no power of review. Cf. Pilch v. Ashcroft, 353 F.3d 585, 587 (7th Cir. 2003) (interpreting a similar jurisdiction-stripping provision of the IIRIRA's transitional rules, IIRIRA § 309(c)(4)(E), and explaining that, absent an all-or-nothing approach, "there would be no jurisdiction if the agency is right but jurisdiction when it errs; [and] that would be a back door assertion of jurisdiction to review every decision, and an effective nullification of the statute"). Cho counters that the "decision or action" referred to in the statute is not the Attorney General's discretionary decision to withhold a hardship waiver, but the specific and non-discretionary (or so she argues, see infra) ruling upon which that decision depended and which she challenges in her petition -- i.e., that Cho is not within the class of aliens entitled to apply to discretionary relief under 8 U.S.C. § 1186a(c)(4)(B) because she failed to establish that she married in good faith.

We think that Cho has the better of this argument. We start with the fact that the Attorney General's position proves too much. Even if we were to accept for the sake of argument that the final agency order at which the petition is directed, and not the eligibility ruling leading to the order, is the "decision or action" to which 8 U.S.C. § 1252(a)(2)(B)(ii) refers, the final agency order in this case would not be the Attorney General's

rejection of Cho's application for a hardship waiver. Rather, it would be the removal order itself, which is the final decision of the Attorney General that we have jurisdiction to review under 8 U.S.C. § 1252(a)(1). See Subhan v. Ashcroft, 383 F.3d 591, 594 (7th Cir. 2004). And the removal order is not a decision or action the authority for which is specified by the relevant statute to be in the discretion of the Attorney General. See id.

Accordingly, and contrary to the position he takes in his brief, the Attorney General needs us to look to the rationale underlying his order, and not simply the nature of the order itself, if 8 U.S.C. § 1252(a)(2)(B)(ii) is ever to preclude court review of a final removal order. And in this case, the rationale for the final removal order was not that the Attorney General, in an exercise of the discretion conferred upon him by 8 U.S.C. § 1186a(c)(4)(B), saw fit to reject Cho's application for a hardship waiver; it was that Cho is ineligible as a matter of law for a discretionary hardship waiver under § 1186a(c)(4)(B) because she failed to establish that she married in good faith. So even if we assume arguendo that the "decision or action" to which § 1252(a)(2)(B)(ii) refers in the context of this case is not the removal order, but is the specific decision leading to the removal order, we would not accept the Attorney General's characterization of that decision as involving a discretionary denial of a hardship waiver to an eligible alien under § 1186a(c)(4)(B).

-7-

Treating the Attorney General's ineligibility ruling as the relevant "decision or action" (again, assuming for the sake of argument that the relevant "decision or action" is not the removal order itself) is consistent with the approach we have taken in other cases interpreting similar jurisdiction-stripping provisions of the IIRIRA. In those cases, we have consistently emphasized that, in deciding whether a jurisdiction-stripping statute applies, we should engage in a precise reading of both the agency decision and the petition. See Succar v. Ashcroft, 394 F.3d 8, 20 (1st Cir. 2005) (interpreting 8 U.S.C. § 1252(a)(2)(B)(i)); Prado v. Reno, 198 F.3d 286, 288 (1st Cir. 1999) (also interpreting § 1252(a)(2)(B)(i)); Bernal-Vallejo v. INS, 195 F.3d 56, 61-62 (1st Cir. 1999) (interpreting IIRIRA § 309(c)(4)(E)).

The reasons for reading precisely provided in those cases pertain here as well. First, if Congress had intended to preclude all court review of agency decisions involving hardship waiver applications, it is hard to see why it would not have said so more clearly and categorically, using language such as that in, for example, IIRIRA § 309(c)(4)(G) ("[T]here shall be no appeal permitted in the case of an alien who is inadmissable or deportable by reason of having committed [certain criminal offenses]") -- a transitional rule which we have read to preclude all court review in the case of an alien who was deemed by the agency to be inadmissible or deportable by reason of having committed one of the

-8-

specified criminal offenses. See Bernal-Vallejo, 195 F.3d at 62; see also Ruckbi v. INS, 159 F.3d 18, 21 (1st Cir. 1998). And short of using language of this sort, Congress certainly could have added 8 U.S.C. § 1186a(c)(4)(B) to the list of statutes described in 8 U.S.C. § 1252(a)(2)(B)(i) as involving "judgment[s]" that "no court shall have jurisdiction to review." See Prado, 198 F.3d at 290 (suggesting in dicta that the jurisdiction-stripping language of § 1252(a)(2)(B)(i) prohibits review of a "broader" range of agency decisions than does IIRIRA § 309(c)(4)(E), which, like § 1252(a)(2)(B)(ii), prohibits review of only certain discretionary "decisions"); but see Montero Martinez v. Ashcroft, 277 F.3d 1137, 1141-44 (9th Cir. 2002) (holding that the term "judgment" in § 1252(a)(2)(B)(i) encompasses only discretionary decisions by the Attorney General).

Second, the IIRIRA's jurisdiction-stripping provisions have been interpreted not to preclude judicial review "of the legal question of interpretation of the statute as to whether an alien is eligible for consideration of relief." Succar, 394 F.3d at 19 (emphasis added); see also Goncalves v. Reno, 144 F.3d 110, 125 (1st Cir. 1998) ("Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant relief.").

Third, and relatedly, the eligibility ruling challenged here is <u>not</u> one that historically has been regarded as entirely discretionary. <u>See</u> <u>Bernal-Vallejo</u>, 195 F.3d at 63 (looking at pre-IIRIRA caselaw to determine whether a particular ruling should be regarded as purely discretionary or as having a reviewable legal component). Rather, it is a question the resolution of which has been regarded as circumscribed by a legal standard. <u>See</u> <u>Rodriguez</u> v. <u>INS</u>, 204 F.3d 25, 27 (1st Cir. 2000) (adopting and applying a legal standard -- "whether, at the time of the marriage, there was an intent to establish a life together" -- in reviewing the Attorney General's determination that the petitioner failed to establish that he had married in good faith) (citation and quotation marks omitted); <u>see also, e.g.</u>, <u>Damon</u> v. <u>Ashcroft</u>, 360 F.3d 1084, 1088-89 (9th Cir. 2004) (concluding, in light of governing legal principles and without discussion of any jurisdictional issues, that there was no substantial evidence to support the Attorney General's determination that an alien was ineligible for § 1186a(c)(4)(B) relief because she failed to prove that she had married in good faith). It also is a question whose resolution is informed by objective regulatory criteria set forth at 8 C.F.R. § 216.5(e)(2) (listing factors to be considered in assessing whether a marriage was entered into in good faith). <u>Cf.</u> <u>Bernal-Vallejo</u>, 195 F.3d at 62 (observing that inquiries guided by objective statutory criteria are not discretionary).

Our jurisdictional inquiry does not end with our decision to treat the Attorney General's eligibility ruling, and not his denial of the hardship waiver, as the relevant "decision or action" for purposes of assessing the effect of 8 U.S.C. § 1252(a)(2)(B)(ii) on Cho's petition. The Attorney General has a fallback position: that his eligibility rulings are themselves discretionary decisions or actions shielded from substantial evidence review under § 1252(a)(2)(B)(ii). At first, this argument seems implausible in light of the authority, set forth in the preceding paragraph, suggesting that the decision whether an alien has married in good faith is not completely discretionary but is, rather, a decision with a legal component that helps define the class of aliens eligible for hardship waivers. But as the Attorney General correctly points out, 8 U.S.C. § 1186a(c)(4)(B) not only commits to the Attorney General's discretion the decision whether to grant eligible aliens hardship waivers, but it also contains the provision which states: "In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General."

In the Attorney General's view, this "sole discretion" provision effectively describes all that goes into a threshold eligibility ruling under 8 U.S.C. § 1186a(c)(4)(B), and thus

renders all such rulings "decision(s) or action(s)" textually committed to the Attorney General's unreviewable discretion per 8 U.S.C. § 1252(a)(2)(B)(ii). The Attorney General says that the Third Circuit has accepted this reading of the statute. See Urena-Tavarez v. Ashcroft, 367 F.3d 154, 159-61 (3d Cir. 2004); see also Assaad v. Ashcroft, 378 F.3d 471, 475 (5th Cir. 2004) (following Urena-Tavarez); Randhawa v. Ashcroft, 2005 WL 221502 (6th Cir. Jan. 31, 2005) (unpublished opinion) (same).

Although Urena-Tavarez and the cases which follow it use sweeping language, they do not unequivocally hold that 8 U.S.C. § 1252(a)(2)(B)(ii) bars all court challenges to determinations by the Attorney General that an alien has failed to prove that she married in good faith and thus is ineligible for discretionary relief under 8 U.S.C. § 1186a(c)(4)(B). Of the three opinions, only Urena-Tavarez describes in any detail the nature of the arguments made in the petition for review, and it is clear that the arguments in that case were directed at the Attorney General's credibility determinations and the weight he gave to the evidence that he credited. See 367 F.3d at 160-61. And we certainly have no quarrel with the conclusion that § 1252(a)(2)(B)(ii) precludes court review of petitions grounded in such arguments (again, assuming arguendo that we should peek behind the veil of the removal order itself).

But we think it evident that the portion of 8 U.S.C. §

-12-

1186a(c)(4)(B) which commits to the Attorney General's "sole discretion" the tasks of deciding what evidence is credible and the weight to be given to that evidence should not be read also to commit to the Attorney General's sole discretion the qualitatively different tasks of interpreting applicable background legal questions and applying those standards to the evidence ultimately credited and deemed weighty. Such a reading would broadly interpret the relevant statutory language, unnaturally we think, to yield an outlier enclave of administrative law in which the courts are stripped of their customary power to be the final word on the meaning of legal concepts imbedded in our immigration statutes.[2] Not surprisingly, the Supreme Court has cautioned against such outcomes. See INS v. St. Cyr, 533 U.S. 289, 298 (2001); see also Montero-Martinez, 277 F.3d at 1141. Perhaps this is why courts, including ours, have not hesitated to review the Attorney General's threshold eligibility determinations under § 1186a(c)(4)(B) for substantial record evidence notwithstanding the statute's "sole discretion" provision -- a provision which, incidentally, pre-dates the IIRIRA. See, e.g., Syed v. Ashcroft,

---

[2]Indeed, one should be careful not to read the "sole discretion" language too broadly, because such a reading could be in tension both with the previous sentence in the statute -- directing that (our emphasis) "the Attorney General shall consider any credible evidence relevant to the application" -- and the legislative history describing the origin and purpose of the two sentences, as a pair. See H.R. Rep. 103-395 (describing purpose of section 242); H.R. Conf. Rep. 103-711 at 164-65.

-13-

389 F.3d 248, 251 (1st Cir. 2004); Rodriguez, 204 F.3d at 27. There is, after all, only marginal (if any) tension between the "sole discretion" provision (narrowly directed to the question of what evidence is credible and how much weight it should be given) and the substantial evidence standard of review (as applied to the statutory question whether the marriage was entered into in good faith), which merely looks to whether an agency determination is reasonably grounded in the administrative record and has never properly been understood to permit a reviewing court either to substitute its own credibility findings for those made by the agency or to weigh the credited evidence itself. See, e.g., Consolo v. Federal Maritime Comm., 383 U.S. 607, 619-21 (1966); Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001); see generally II Richard J. Pierce, Jr., Administrative Law Treatise, § 11.2 (4th ed. 2002).

We conclude our discussion of jurisdiction by observing that the concern expressed by Judge Easterbrook in Pilch and noted above -- that allowing a peek behind the veil at the actual rationale of the Attorney General's decision would open the door to the de facto nullification of the jurisdiction-stripping statute, see 353 F.3d at 587 -- is not relevant here. We hold today only that eligibility rulings under section 1186a remain reviewable by the courts, and that this is true whether the 'decision or action' phrase of § 1252(a)(2)(B)(ii) covers only 'final' decisions or also

-14-

interim rulings, cf. Subhan, 383 F.3d at 594-95. The jurisdictional questions arising from that statutory provision are many and complex, and nothing we say here should be taken to dictate answers for problems beyond the one we are addressing.

We turn now to whether there is substantial record evidence supporting the Attorney General's decision, here delegated to and made by the BIA, that Cho failed to prove that she married in good faith. The relevant legal standard is, again, whether Cho intended to establish a life with her spouse at the time she married him. See Rodriguez, 204 F.3d at 27 (citing Bark v. INS, 511 F.2d 1200, 1201 (9th Cir. 1975)). Cho's marriage is legitimate so long as this standard is met, even if securing an immigration benefit was one of the factors that led her to marry. See Matter of Boromand, 17 I. & N. Dec. 450, 454 (BIA 1980); Sarah Ignatius & Elisabeth S. Stickney, Immigration Law & the Family, § 4:21 (2004); cf. United States v. Tagalicud, 84 F.3d 1180, 1185 (9th Cir. 1996) ("The ulterior motive of financial benefit or immigration benefit does not make the marriage a fraud, though it may be evidence that the marriage is fraudulent.") (interpreting 8 U.S.C. § 1325(b)).

We start with the fact that Cho made a very strong showing that she married with the requisite intent to establish a life with her husband. Cho introduced uncontradicted evidence -- expressly credited by the IJ and never questioned by the BIA -- that she and her future husband engaged in a nearly two-year

-15-

courtship prior to marrying (Cho lived in Taiwan at the time she was telephonically introduced to her future husband by a mutual acquaintance in January 1996); that she and her future husband were in frequent telephonic contact during the portions of this two-year period when they lived apart (telephone records were introduced to substantiate this); that her future husband traveled to Taiwan and then to Burma in December 1996 (he stayed through early 1997) to meet her and her family; that she paid a ten-day visit to her future husband in the United States in March 1997 to meet his family and to sightsee; that she returned to the United States in June 1997 (on a visitor's visa which permitted her to remain in the country through late September 1997) to decide whether she would remain in the United States or whether her future husband would move with her to Taiwan; that the two decided to marry civilly on September 15, 1997 and then to return to Taiwan to hold a more formal reception (a reception that was never held because of emergent marriage troubles traceable, inter alia, to her husband's physical and emotional abuse and intimate relationship with a former girlfriend); and that the two lived together at his parents' house from the time of her arrival in the United States in June 1997 until he asked her to move out on April 22, 1998 (the day of her conditional residency interview, at which she angered her husband by arriving with counsel and an affidavit detailing his abuse of her).

-16-

In addition, Cho introduced evidence that, after the marriage, she and her husband jointly enrolled in a health insurance policy, filed tax returns, opened bank accounts, entered into automobile financing agreements, and secured a credit card. See 8 C.F.R. § 216(e)(2)(i) (noting the potential relevance to the good-faith determination of "[d]ocumentation relating to the degree to which the financial assets and liabilities of the parties were combined"). Cho also introduced extensive counseling records from the period following her separation which detailed her therapists' perceptions that she harbored a strong desire to make her marriage work and her serious depression over its troubles and eventual failure.

The BIA cited four facts in support of its conclusion that, in spite this evidence (which the Board acknowledged but did not discuss), Cho had failed to carry her burden: (1) her application to secure conditional permanent residency, and a visa petition her husband concomitantly submitted on her behalf, were prepared in Cho's handwriting within two weeks of the marriage; (2) Cho and her husband married one week prior to the expiration of the visitor's visa by which she came to the United States in June 1997; (3) Cho's husband maintained an intimate relationship with another woman during the marriage; and (4) Cho obtained employment and moved out of the marital residence shortly after obtaining conditional residency. These findings are problematic and do not,

-17-

alone or in combination, sufficiently ground the Attorney General's inference about Cho's intent at the time of her marriage.

The BIA did not explain, and we do not see, how Cho's prompt submission of a conditional residency application after her marriage tends to show that Cho did not marry in good faith. As we already have stated, the visitor's visa by which Cho entered the country expired just after the marriage, so Cho had to do something to remain here lawfully. So too with the fact that the relevant forms were filled out in Cho's handwriting; how this tends to show a sham marriage is unexplained and not apparent to us (especially in light of the uncontradicted record evidence that Cho filled out the forms because she wrote more legibly in English than did her husband). And while Cho's husband's intimate relationship with another woman during the marriage might well have been probative of Cho's marital intentions if there were some evidence that Cho knew of the relationship and its nature at the time she married, the uncontradicted evidence was that Cho learned of the affair only <u>after</u> the marriage. These facts thus do little to substantiate the conclusion that Cho failed to establish the <u>bona</u> <u>fides</u> of her marriage.

This leaves the two findings regarding the timing of the marriage and the separation. Taken in isolation, these findings might seem to identify substantial evidence in support of the Attorney General's decision. After all, the findings are supported

-18-

by the record, and ordinarily, one who marries one week prior to the expiration of her visitor's visa and then moves out of the marital home shortly after the conditional residency interview might reasonably be thought to have married solely for an immigration benefit. But we are not permitted to analyze these findings in isolation; we must evaluate them in context. See, e.g., Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004) (emphasizing that substantial evidence review requires an assessment of the entirety of the administrative record). And when we do so, any connotation of fraud raised by the timing of the marriage and the separation largely evaporates. For the undisputed and credited record evidence establishes both that the marriage was preceded by a long courtship and that Cho's husband initiated the separation after Cho publically embarrassed him by retaining counsel and detailing his abuse of her at the conditional residency interview. Thus, this "timing" evidence does not seem to us to be "such evidence as a reasonable mind might accept as adequate" to ground the Attorney General's eligibility determination. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

The substantial evidence test requires that we "'conscientiously find that the evidence supporting [the Attorney General's] decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.'" Mukamusoni, 390 F.3d at 119

(quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). For the reasons set forth above, we cannot so find based on the record in this case. Therefore, we conclude that petitioner Cho has satisfied the "good faith" marriage requirement for eligibility under 8 U.S.C. § 1186a(c)(4)(B). Accordingly, we grant Cho's petition for review and remand this matter to the BIA for further proceedings consistent with this opinion. This resolution eliminates any need for us to consider whether the BIA erred in upholding the IJ's denial of Cho's motion to reconsider.

**So ordered**.[3]

---

[3]We acknowledge with gratitude the efforts of the Family Violence Prevention Fund, the Massachusetts Law Reform Institute, the National Immigration Project of the National Lawyers Guild, and Greater Boston Legal Services, who jointly filed a brief as amici curiae in support of Cho.

-20-