# United States Court of Appeals
## For the First Circuit

No. 05-1172

CLAUDIO RODRIGUEZ DEL CARMEN,

Petitioner,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Lynch, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges.

Raymond Sanchez Maceira on brief for petitioner.
Thankful T. Vanderstar, Trial Attorney, Peter D. Keisler,
Assistant Attorney General, and Christopher C. Fuller, Senior
Litigation Counsel, on brief for respondent.

March 23, 2006

**CYR, Senior Circuit Judge**.  In 1994, petitioner Claudio Rodriguez Del Carmen, a native and citizen of the Dominican Republic, married Awilda Sepulveda Benitez, a United States citizen.  In 1996, he was admitted for permanent residence on a conditional basis.  See 8 U.S.C. § 1186a.  In 1997, Rodriguez and Sepulveda jointly submitted a petition to remove Rodriguez's conditional status.  In 1999, they were divorced.  The following year, the conditional status was removed, and Rodriguez was granted lawful permanent resident status.

In 2001, two Immigration and Naturalization Service (INS) agents interviewed Sepulveda, who stated under oath, on audiotape, that Rodriguez had paid her $1500 to marry him and that they neither lived together nor had marital relations.  On the day that Sepulveda had filed her affidavit in support of Rodriguez' petition to become a lawful permanent resident, she and Rodriguez jointly opened a bank account with a $1500 balance.  During the 2001 interview, Sepulveda executed an acknowledgment and waiver of rights, and repeatedly stated that the INS agents had made no promises or threats to procure her statement.

The Department of Homeland Security ("the Department") commenced proceedings to deport Rodriguez, see id. § 1227(a)(1)(A), alleging inter alia that he had procured permanent resident status by entering into a fraudulent marriage.  See id. § 1182(a)(6)(C)(i).  At the deportation hearing, the Department

-2-

introduced Sepulveda's sworn statement in evidence. However, Sepulveda testified that her sworn statement was false, that she suffered from "psychological problems," and that the INS agents had coerced her into making the sworn statements by threatening to take her children away from her unless she incriminated Rodriguez. Although Sepulveda now contends that her marriage with Rodriguez had been bona fide, she was unable to testify to important details regarding their marital arrangement, such as the address of their joint habitation and the names of Rodriguez' parents. Sepulveda conceded that, after their marriage, Rodriguez had left her and relocated to the Dominican Republic for about three years. The interviewing INS agent testified in rebuttal that he never made any threats regarding the Sepulveda children, and that Sepulveda repeatedly acknowledged throughout her 2001 interview that her statements were voluntary.

In due course, the immigration judge ("IJ") ruled that Rodriguez had entered into a fraudulent marriage, thereby rendering him ineligible for permanent resident status. On appeal, the Board of Immigration Appeals adopted and affirmed the IJ's decision. Rodriguez petitions for review.

Rodriguez contends that the IJ erred, in that the rejection of the Sepulveda in-court recantation cannot suffice, standing alone, to establish that the marriage was fraudulent, and also because the record contained other undisputed evidence (e.g.,

-3-

love letters) demonstrating that the marriage was valid.

We review the IJ's finding – that the Rodriguez marriage to Sepulveda was fraudulent – in order to determine whether it is supported by "substantial evidence," and we will uphold it unless the record would compel a contrary finding. See Ang v. Gonzales, 430 F.3d 50, 54-55 (1st Cir. 2005). Matters of witness credibility and demeanor are peculiarly for the factfinder. See Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004) ("Where . . . the judicial officer who saw and heard the witness makes an adverse credibility determination and supports that determination with specific findings, an appellate court should treat that determination with great respect.").

Rodriguez first contends that the IJ's decision is improperly based solely on the fact that Sepulveda recanted her sworn statement. We disagree. Substantial evidence supports the IJ's findings. First, the IJ properly could assign some weight to the plausibility, vel non, of the Sepulveda in-court testimony as evidence of her fraudulent intent. See United States v. Lopez, 944 F.2d 33, 40 (1st Cir. 1991) (noting that assessment of an in-court recantation is the province of the factfinder). Furthermore, the IJ expressly determined that the 2001 statement made by Sepulveda – that Rodriguez paid her $1500 to marry him and that they never cohabitated or had marital relations – was not coerced, hence constituted a credible account of her marriage to Rodriguez. This

-4-

credibility finding is supported by substantial record evidence. The INS agents had verbally informed Sepulveda of her rights prior to the 2001 interview, after which she signed a written waiver of those rights. One of the interviewing agents testified that he had not coerced Sepulveda, and that Sepulveda had acknowledged during the interview that the INS agents had not made any promises or threats. Sepulveda admits to volunteering the $1500 payoff figure (viz., the precise amount on deposit in the joint bank account she opened with Rodriguez on the very day she filed her affidavit in support of his petition to become a permanent lawful resident). See Cho v. Gonzales, 404 F.3d 96, 103 (1st Cir. 2005) (noting that receipt of payment may serve as evidence that marriage was fraudulent). Her self-incriminating statements that she had entered into a fraudulent marriage were obviously against her penal interests.

At the hearing before the IJ, Sepulveda also was unable to recall important details of her putative married life, such as the address of her joint habitation with Rodriguez, the names of Rodriguez' parents, or how long she had dated Rodriquez before they married, see Syed v. Ashcroft, 389 F.3d 248, 252 (1st Cir. 2004) (noting that witness's vagueness and contradiction in details may evidence that marriage was fraudulent), which tends to corroborate her sworn 2001 statement that she never lived with nor had marital relations with Rodriguez. Given the sketchiness of Sepulveda's

memory, the IJ also was not compelled to credit the testimony of her mother, who purported to supply details concerning the bona fides of the marital arrangement, but whose bias toward her daughter gave the IJ a reasonable basis for questioning the veracity of her account. Further, even if the IJ fully credited the mother's testimony that INS agents repeatedly had started and stopped the tape recorder during her daughter's interview, the IJ was not compelled to accept the mother's additional inference that the INS agents must have "selectively" recorded the interview to leave out evidence of their coercive tactics.[1] For all these reasons, we conclude find that the IJ's finding that the marriage was fraudulent is supported by substantial evidence and must be affirmed.

Finally, Rodriguez argues that the IJ improperly discounted other evidence which conclusively demonstrated the bona fides of the putative marriage, such as his love letters to Sepulveda, life insurance policies naming her as his beneficiary, and their joint tax returns. The IJ was not compelled to credit this evidence, however, especially in the face of the above-described evidence suggesting that the marriage was fraudulent. The IJ reasonably could conclude that the documentary evidence,

---

[1]Sepulveda's mother could not testify that the INS agents had made any promises or threats during the 2001 interview; she conceded that she had spent the entire interview in her bedroom watching television and did not hear any of it.

such as the love letters, insurance policy and tax returns, constitutes deliberate contrivances to conceal the fraudulent nature of the Rodriguez marriage for the exclusive purpose of evading the immigration laws.

Accordingly, as we cannot conclude that the record evidence compels a finding that the Rodriguez "marriage" to Sepulveda was bona fide, the BIA decision must be affirmed.

**<u>Affirmed</u>**.