# United States Court of Appeals
## For the First Circuit

No. 05-2562

WEIPING ZHENG,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Cyr, Senior Circuit Judge.

Alexander K. Yu, on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Terri J. Scadron, Assistant Director, and Sin Wong, Attorney, Office of Immigration Litigation, U.S. Department of Justice, on brief for respondent.

September 26, 2006

**CYR, Senior Circuit Judge**.  Weiping Zheng petitions for review of the Board of Immigration Appeals' (BIA) decision affirming an immigration judge's denial of his application for asylum and withholding of deportation.  We affirm.

**I**

**BACKGROUND**

Zheng, a native and citizen of the People's Republic of China, illegally entered the United States in 2002.  In 2003, the Immigration and Naturalization Service (INS) initiated removal proceedings in Los Angeles.  Zheng conceded removability, then applied for asylum based on his contention that he had experienced religious persecution in China due to the fact he is a Christian.  On January 22, 2003, Zheng's attorney had the case transferred to Boston, then notified the court that he was withdrawing as Zheng's counsel.  Three months later the same attorney appeared at a telephonic calendar hearing in Boston, and asserted that he had agreed to continue his representation of Zheng.  The court scheduled a merits hearing for February 17, 2004, at which Zheng appeared without counsel.  The immigration judge ("IJ") noted the fact for the record, but without inquiring whether Zheng was still represented by counsel.

Zheng testified at length regarding the religious persecution he allegedly suffered in China, stating that he had "become a Catholic with [his] grandparents" but that his parents

-2-

were not Catholic," but Buddhists. Zheng was arrested, sometime in 2002, for distributing religious leaflets in public. The arrest occurred at 10:00 p.m. Zheng was unable to describe the contents of the leaflets in any detail, except that the leaflets were "about the Bible and God protecting families." Zheng maintained that the police had detained and tortured him for four days, then released him on "probation" without lodging any charge against him after his parents posted bail. According to Zheng, the police required that he report once a week following his release.

At the conclusion of his testimony, Zheng asked that the IJ transfer the case to Tennessee, where he was then residing. The IJ denied the request as untimely, then proceeded to rule on the merits of Zheng's asylum application. The IJ concluded that Zheng's testimony contained several inconsistencies, hence was not creditworthy. Whereupon the IJ denied the Zheng asylum application and request for withholding of deportation, then ordered that he be deported.

On appeal to the Board of Immigration Appeals (BIA), Zheng contended that (i) the IJ violated his due process rights by failing to ensure that he was represented by counsel at the merits hearing, and (ii) the IJ's credibility determination was not supported by substantial evidence. After the BIA affirmed the IJ's decision, Zheng petitioned for review of the BIA's decision.

## DISCUSSION

### A.   The Due Process Claim

Zheng reiterates the claim that the IJ was obligated to inquire, at the February 17, 2004, hearing, as to why Zheng was no longer represented by counsel.  Due process claims asserted in deportation proceedings are reviewed de novo.  See Kheireddine v. Gonzales, 427 F.3d 80, 83 (1st Cir. 2005).  Although the Sixth Amendment does not accord prospective deportees a right to counsel, provided by the government, the prospective deportee is entitled to retain counsel at his own expense.  See INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984); Nelson v. INS, 232 F.3d 258, 262 (1st Cir. 2000); 8 U.S.C. §§ 1229a(b)(4)(A), 1362.  Zheng contends that it was insufficient that the IJ informed him of his right to retain counsel at the outset of his case, but rather the IJ was constitutionally obligated to remind Zheng of the right to retain counsel at each and every subsequent hearing held in his case.  We disagree.

Zheng cites no supportive authority for this contention.  Moreover, an IJ sufficiently informed Zheng of the right to retain counsel at the very outset of his deportation case, following which he had thirteen months to arrange for legal representation at the February 2004 hearing on the merits.  See, e.g., Nelson, 232 F.3d at 262-63; Hidalgo-Disla v. INS, 52 F.3d 444, 447 (2d Cir. 1995)

(rejecting as frivolous the contention that an IJ, who already had advised alien of his right to retain counsel at two previously continued hearings, was obligated to remind alien at the third hearing when he arrived without counsel). The fact that Zheng ultimately failed to retain counsel to appear at the February 2004 hearing did not obligate the IJ to issue yet another admonishment or continuance, and the failure to do so did not constitute a deprivation of due process. See id. at 447 (noting that contrary rule could result in endless continuances).[1]

## B.    The Challenge to the IJ's Findings of Fact

Zheng next contends that the explicit finding by the IJ – that Zheng's description of his arrest was not creditworthy – is not supported by the record. We review adverse credibility findings under a "substantial evidence" standard, whereby "if we cannot say a finding that the alien is credible is compelled – then the decision must be affirmed." Chen v. Gonzales, 418 F.3d 110, 113 (1st Cir. 2005); see 8 U.S.C. § 1252(b)(4)(B). We defer to the IJ's credibility determination where three conditions are met: "(1) the discrepancies and omissions described by the [IJ] must actually

---

[1]On appeal, Zheng also contends that the incompetence of his court interpreter in translating Mandarin Chinese resulted in a deprivation of due process. The alleged translation discrepancies Zheng identifies – such as the rendering of "Christian" as "Catholic" – were not sufficiently material to have affected the IJ's disposition of the asylum claim. See Harutyunyan v. Gonzales, 421 F.3d 64, 70 (1st Cir. 2005) ("harmless error" review); see also infra note 2.

be present in the record; (2) the discrepancies and omissions must provide specific and cogent reasons to conclude that the alien provided incredible testimony; and (3) a convincing explanation for the discrepancies or omissions must not have been supplied by the alien." Hoxha v. Gonzales, 446 F.3d 210, 214 (1st Cir. 2006) (citing In re A-S-, 21 I & N Dec. 1106, 1109 (BIA 1998)); see Syed v. Ashcroft, 389 F.3d 248, 252 (1st Cir. 2004). In order to support a finding that the alien's testimony was not credible, however, the discrepancies normally must pertain to facts central to the merits of the alien's claims, not merely to peripheral or trivial matters. See Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999).[2]

The IJ predicated his credibility determination on the following facts: (i) Zheng's testimony as to the month or day of his arrest was "quite vague"; (2) Zheng testified that his arrest occurred at 10:00 p.m., yet the arrest notice issued by the public security department states that Zheng was arrested at 10:30 a.m.; (iii) Zheng incorrectly testified that he left China in April 2002, whereas his actual departure date was July 25, 2002; (iv) Zheng

_____

[2]Zheng alternatively argues that the BIA improperly engaged in de novo factfinding, rather than limiting itself to "clear error" review of the IJ's findings of fact, as required by 8 C.F.R. § 1003.1(d)(3). We disagree. Zheng objects, for instance, that the BIA characterized him as a "Christian," whereas the IJ had noted that he was baptized a "Catholic." As all Catholics are, by definition, Christians, we are at a loss to see how this constitutes either a material discrepancy, or a prejudicial divergence from the IJ's findings of fact.

-6-

testified that he could not remember the details of his arrest without consulting his papers, yet someone subjected to arrest and torture likely would retain more vivid memories of such details; (v) Zheng testified that he had been detained for four days, whereas in an earlier interview with an asylum officer and in his written asylum application, he stated that he had been detained for fifteen days; (vi) when asked about the inconsistency, Zheng testified – for the first time – that he was rearrested after he subsequently failed to report to the police as required under the terms of his post-release probation, whereas earlier he had told an asylum officer that he had complied with the reporting requirement until he left China; (vii) Zheng was unable to recall in any detail the religious information contained in the pamphlets that he assertedly distributed; (viii) Zheng testified that he had been discharged from his job after his release from prison on April 30, whereas the discharge notice was issued six days prior to his release; (ix) the public security department issued Zheng a resident identification card seventeen days after he departed China, which the department would not likely have done were Zheng a fugitive who had failed to check in for his weekly probation reports; (x) Zheng's proffered documentation – such as his job termination notice – appeared to be amateurish forgeries; and (xi) Zheng's demeanor during his testimony reflected not only a lack of confidence, but evasiveness as well.

On appeal, Zheng challenges only two of the eleven findings. First, he explains that he did not testify that he was arrested at 10:00 p.m., but simply that he was distributing leaflets at 10:00 p.m., and instead, he testified that he was "half way through" his distribution when the police arrested him. However, even accepting this proposed interpretation, arguendo, the IJ would have had to infer that Zheng had planned to distribute leaflets for at least twenty-four hours, i.e., around the clock from 10:00 p.m. to 10:00 p.m. the following evening. More plausibly, the testimony implies simply that Zheng was halfway through his planned distribution at 10:00 p.m. when he was arrested (viz., Zheng had begun distributing at 5 p.m. and had planned to do so until 5 a.m. the next morning). Considering the implausibility of a twenty-four hour distribution plan, the IJ reasonably could have concluded that Zheng's alternative interpretation was farfetched. Accordingly, we conclude that Zheng's explanation for the discrepancy is unconvincing. See Hoxha, 446 F.3d at 214.

Zheng also notes that his testimony – that he was discharged from his job after his April 30 release from prison – was found to be incredible by the IJ, given that the discharge notification was dated six days prior to his release. Zheng correctly observes that he testified that the discharge occurred after his arrest (viz., during his detention), not after his release. Even if an IJ's credibility determination is based in

part on an incorrect analysis of hearing testimony, however, we may nonetheless affirm where we conclude that no realistic possibility exists that, absent the error, the IJ would have reached a different conclusion. See Harutyunyan v. Gonzales, 421 F.3d 64, 70 (1st Cir. 2005); see also Liu v. United States Dep't of Justice, 455 F.3d 106, 110 (1st Cir. 2006). Notwithstanding the IJ's erroneous depiction of the Zheng testimony concerning the date of his job discharge, the IJ enumerated no less than ten other independent grounds for his credibility determination – all involving conspicuous facts central to Zheng's religious persecution claim – for which Zheng has offered neither adequate nor convincing rebuttal. See Rodriquez Del Carmen v. Gonzales, 441 F.3d 41, 44 (1st Cir. 2004) (noting that vagueness and contradiction in material details of an alien's testimony support an adverse credibility determination); see also Huang v. Gonzales, 438 F.3d 65, 66 (1st Cir. 2006) (observing "the sheer number of other discrepancies" in alien's testimony concerning alleged acts of persecution). Consequently, we must therefore conclude (i) that the IJ would have found Zheng's testimony unworthy of credence even if the IJ had correctly analyzed Zheng's testimony concerning the job discharge, and (ii) that the IJ's adverse credibility determination is well supported by "substantial evidence."

**The petition for review is denied**.