

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-7-2004

# Urena-Tavares v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-1013

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Urena-Tavares v. Atty Gen USA" (2004). *2004 Decisions.* Paper 668.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/668

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

———

No. 03-1013

———

DANIEL URENA-TAVAREZ,

Petitioner

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent

———

Petition for Review of an Order
of the Board of Immigration Appeals
(A44-445-342)

———

Argued January 15, 2004

Before: SLOVITER, RENDELL, and
ALDISERT, Circuit Judges

(Filed May 7, 2004)

———

Steven Vosbikian    (Argued)
Vosbikian and Grady
Cherry Hill, NJ  08034

Attorney for Petitioner

Peter D. Keisler
        Assistant Attorney General
        Civil Division
Jeffrey S. Bucholtz   (Argued)
        Deputy Assistant Attorney General
        Civil Division
David V. Bernal
        Assistant Director
        Office of Immigration Litigation
Russell J.E. Verby
        Trial Attorney
        Office of Immigration Litigation
U.S. Department of Justice
Washington, D.C.  20044

        Attorneys for Respondent

OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this Petition for Review from a final order of removal entered by the Board of Immigration Appeals (BIA) the Petitioner, Daniel Urena-Tavarez (Tavarez),[1] argues that the decision of the

———

[1]    Tavarez's name is spelled differently throughout the record and the briefs.  He is referred to as "Tavares" in the caption on all documents in the Administrative Record, A.R. at 2; as "Tavarez" on the title page of the Petitioner's Brief but as "Tavares" throughout, Pet'r Br. at 2; and as "Tavarez" in the Government's Brief, Gov't Br. at 2.  Because he signed and printed his name as "Tavarez," A.R. at 341, we will refer to him herein as

Immigration Judge (IJ) was not based on adequate findings of fact and that the BIA did not properly evaluate the IJ's findings against himself and his two minor children. In considering the arguments, we find ourselves faced with a more fundamental and more generally applicable question – one going to the statutory limitation on our review of matters committed to the Attorney General's discretion.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Petitioner is a 61-year old native and citizen of the Dominican Republic, and his two children, Danny Zefar Tavarez, age 15, and Daniela Zefar Tavarez, age 14, are also natives and citizens of the Dominican Republic. It is unclear from the record when and in what fashion Tavarez entered the United States, but on September 3, 1992, he married Eladia Pineiro,[2] a citizen of the United States, in Camden, New Jersey, after dating her for about six or seven months. Marriage of an alien to a United States citizen entitles an alien to obtain conditional permanent resident status, Immigration and Nationality Act (INA) § 216(a)(1), 8 U.S.C. § 1186a(a)(1), and Tavarez obtained such status on January 8, 1994 pursuant to an application filed by Pineiro.[3]

Under the INA, the conditions on such status can be removed if "the alien spouse and the petitioning spouse (if not deceased) jointly . . . submit to the Attorney General . . . a petition which requests the removal of such conditional basis . . . ." INA § 216(c)(1)(A), 8 U.S.C. § 1186a(c)(1)(A).[4] Pursuant thereto, Tavarez and Pineiro filed a joint application on December 1, 1995 to have the conditions on Tavarez's permanent residence status removed, and an immigration officer from the then-Immigration and Naturalization Service (INS) scheduled the interview for

---

"Tavarez."

[2] The Petitioner's Reply Brief refers to her as "Eladia Lopez," Pet. Reply Br. at 6; the Government's Brief refers to her as "Elidia Pineiro," Gov't Br. at 6; and the Administrative Record refers to her both as Eladia Pineiro" and "Elidia Pineiro," A.R. at 336. Because her signature appears to be "Eladia Pineiro," A.R. at 337, we will refer to her as "Eladia Pineiro" or as "Pineiro."

---

[3] The Government concedes that the initial application, which is not part of the Administrative Record, was filed by Pineiro. Gov't Br. at 6.

[4] INA statutes will be cited both to their codifications in the INA and in Title 8 of the United States Code the first time they are referenced in this opinion. Subsequent citations will be to Title 8 of the United States Code.

November 19, 1998.[5] Shortly before the interview with the immigration officer, Tavarez and Pineiro quarreled over which of them was responsible for payment of Pineiro's share of the income taxes. Tavarez left the room to use the men's room. Pineiro was called into the interview alone and told the immigration officer that although she did not want to harm Tavarez, "she didn't live with [Tavarez] and she was a friend." A.R. at 134 (testimony of witness Carmen Sanchez). The immigration officer reassured her by stating that she was not harming him. Pineiro then signed a sworn statement before the immigration officer, apparently prepared by the officer, stating that she and Tavarez never lived together as a married couple and that they did not consummate the marriage. She also stated, "I felt pity on him so I married him. I only married her [sic] so she [sic] could obtain her [sic] legal permanent residence." A.R. at 337.

When Tavarez came into the interview room, the immigration officer informed him that he was no longer eligible for permanent resident adjustment status because his wife withdrew the petition. Tavarez "looked at [his wife] and said, what you trying to do? You crazy. Why you doing this? And all [Pineiro] did was put her head down and didn't answer

---

anything." A.R. at 134 (testimony of witness Carmen Sanchez). In the car ride home, when Pineiro realized that Tavarez would be deported, "she started crying and then hugged him and said, you know, sorry, I didn't mean to do that. That's not what I wanted to do, I just wanted to be out of the problem so I didn't have to, you know, pay the taxes . . . ." A.R. at 135-136 (testimony of witness Carmen Sanchez). The INS District Director denied Tavarez's application to remove the condition on his permanent resident status; thus his conditional status was deemed to have expired on January 8, 1996.

Thereafter, the INS began proceedings to remove Tavarez and his children by filing a Notice to Appear, charging that his status as a conditional permanent resident was terminated pursuant to 8 U.S.C. § 1186a, and that he obtained his immigrant status by fraud or willful misrepresentation of a material fact. The removal proceedings were assigned to an IJ.

It was incontestable that Pineiro had withdrawn her support, thereby eliminating any possibility of change of Tavarez's status on the basis of a joint application. Tavarez then filed applications for a waiver of the obligation to file a joint application. Under the INA, the Attorney General may waive the obligation of a joint filing requirement for an alien and his spouse if (1) the removal would result in extreme hardship, (2) the marriage terminated but was entered into in good faith, or (3) the marriage was entered into in good faith but that the

---

[5] The testimony given before the immigration officer is not in the Administrative Record, but was reported to the IJ by witnesses at the two hearings held by him.

3

citizen spouse either battered or subjected the alien spouse to extreme cruelty. INA §§ 216(c)(4)(A)-(C), 8 U.S.C. §§ 1186a(c)(4)(A)-(C). Tavarez based his application on all three statutory exceptions.

Sometime thereafter, Pineiro divorced Tavarez. The IJ summarily denied the waivers based on extreme hardship and battered spouse, stating that there was no or almost no evidence for either. The IJ then considered the evidence from the hearing before him and devoted a significant amount of his decision to discussing the issue of whether the marriage was entered into in good faith. A waiver under INA § 216(c)(4)(B), 8 U.S.C. § 1186a(c)(4)(B), permits removal of the conditions on an alien's permanent resident status without requiring his spouse to petition jointly for such removal if "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse . . . )." Id.

The witnesses before the IJ included Carmen Sanchez, who assisted Tavarez and Pineiro in the preparation of immigration documents, tax filings, and in translation at the immigration interview. At the December 7, 1999 hearing before the IJ, Sanchez testified that in Tavarez's bathroom absence while waiting for the immigration officer's hearing, Pineiro told her that unless Tavarez paid her share of the taxes, she would "drop" his immigration case. A.R. at 132. Sanchez admitted that she never went to the

Tavarez's house, but stated that they were all from the same neighborhood and that she "[saw] them all the time together." A.R. at 148. The IJ characterized Carmen Sanchez as a "rather compelling" and "honest witness" in whose testimony he placed "a great deal of credence." A.R. at 40. The other witness for Tavarez was Danny Tavarez, Tavarez's son, who moved in with the couple in August 1997 after leaving the Dominican Republic, and who testified that Pineiro prepared his meals, picked out his school clothes, and taught him how to do chores. A.R. at 262. The IJ found this testimony to "be worthy of some degree of belief." A.R. at 40.

In addition, Tavarez testified as did his daughter. The final witness, Miguel Espinal, a friend who attended the wedding, testified he would see the couple together, took them to the bank and shopping, and cooked with them at their home. The IJ also considered Pineiro's sworn statement in reaching his decision that the marriage was not undertaken in good faith. Because the IJ concluded that "this is a case of a friendship, of a relationship of some sort but not a marriage," he denied the application for a waiver of the joint filing requirement. A.R. at 43. The IJ ruled that Tavarez is removable under section 237(a)(1)(D)(i) of the INA, 8 U.S.C. § 1227(a)(1)(D)(i), because his status as a conditional permanent resident was terminated. Tavarez appealed to the BIA, which affirmed the decision of the IJ, concluding, "Although [Tavarez] submitted evidence and testimony that his marriage was in

4

'good faith,' in light of his former wife's statement, we defer to the Immigration Judge' [sic] finding in this case." A.R. at 3. Tavarez then filed the pending Petition for Review.

## II.

## DISCUSSION

### A.    8 U.S.C. § 1252(a)(2)(B)(ii)

Shortly before oral argument before this court, the Government sent the court a letter, pursuant to Federal Rule of Appellate Procedure 28(j), stating that "[u]nder [8 U.S.C.] § 1252(a)(2)(B)(ii), this Court lacks jurisdiction to review [the denial of the waiver], because [8 U.S.C.] § 1186a(c)(4) confers to the Attorney General's 'sole discretion' the determination whether petitioner presented evidence of sufficient credibility and weight to satisfy that provision." 28(j) Letter from the Government, to Office of the Clerk, at 2 (Jan. 13, 2004). We must first consider this issue of jurisdiction, as it "is axiomatic that this court has a special obligation to satisfy itself of its own jurisdiction. . . ." United States v. Touby, 909 F.2d 759, 763 (3d Cir. 1990) (internal quotation and citation omitted). We review jurisdictional questions de novo. See Luu-Le v. INS, 224 F.3d 911, 914 (9th Cir. 2000).

The Supreme Court has held that only a showing of "clear and convincing evidence" is sufficient to support a finding that Congress intended to preclude judicial review of an administrative action. Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 44 (1991).

This standard reinforces "the presumption favoring judicial review of administrative action." Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349 (1984). Where congressional intent to preclude judicial review is "fairly discernible" in the detail of the particular legislative scheme, this presumption favoring judicial review does not apply. Id. at 351; see also Ismailov v. Reno, 263 F.3d 851, 854-55 (8th Cir. 2001).

The jurisdictional statute in question states:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a)[, which governs asylum,] of this title.[6]

---

[6]    We address in this opinion the question of whether we can review decisions under 8 U.S.C. § 1186a(c)(4) "regarding discretionary relief by the Attorney General and his designees, which includes, inter alia, IJ, the BIA, INS District Directors, and INS Regional Commissioners." Montero-Martinez v. Ashcroft, 277 F.3d 1137, 1140 n.1 (9th

8 U.S.C. § 1252(a)(2)(B).

The language "this subchapter" in the foregoing provision refers to Subchapter II in Chapter 12 of Title 8 of the United States Code, and includes section 1186a, the provision at issue here that governs conditional permanent resident status based on marriage to a United States citizen.

Congressional intent to preclude judicial review in situations outlined in this provision is not merely "fairly discernible," it is express and manifest. This jurisdiction-stripping provision is part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). The Supreme Court has stated that "many provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation. See, e.g., 8 U.S.C. § 1252(a)(2)(A) (limiting review of any claim arising from the inspection of aliens arriving in the United States); § 1252(a)(2)(B) (barring review of denials of discretionary relief authorized by various statutory provisions); § 1252(a)(2)(C) (barring review of final

removal orders against criminal aliens); § 1252(b)(4)(D) (limiting review of asylum determinations for resident aliens)," Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 486-87 (1999) (discussing the scope of 8 U.S.C. § 1252(g)).[7]

The scope of section 1252(a)(2)(B)(ii) has been the subject of some disagreement among the courts of appeals. Section 1252 is captioned "Judicial review of orders of removal." The courts have had to decide whether the provision strips courts of appeals from reviewing all discretionary decisions or

---

Cir. 2002). Because in the instant case the BIA deferred to the findings of the IJ on the relevant "good faith" issue, we review the opinion of the IJ, Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001), and will use "IJ" or "BIA" as a shorthand for the Attorney General and his designees.

[7] As the Court noted, there are many jurisdiction-stripping provisions in IIRIRA, some of which appear at first glance to foreclose review in similar kinds of situations. Among the provisions not mentioned by the Supreme Court: "For example, section 1252(e) addresses limitations on judicial review of exclusion orders, including habeas review and collateral constitutional challenges to the validity of the system; section 1252(f) provides limitations on injunctive relief available in courts other than the Supreme Court; and, section 1252(g) bars review of the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders." CDI Info. Servs., Inc. v. Reno, 278 F.3d 616, 620 (6th Cir. 2002). In this opinion, we focus our inquiry upon the scope of 8 U.S.C. § 1252(a)(2)(B)(ii) and its applicability to 8 U.S.C. § 1186a(c)(4), and express no position about the other provisions.

only those made in the context of removal proceedings. Three courts of appeals have held that section 1252(a)(2)(B)(ii) applies to <u>all</u> discretionary decisions enumerated in the relevant subchapter of Title 8, which includes sections 1151-1378, regardless of the context in which the decisions were made. <u>See</u> <u>Samirah v. O'Connell</u>, 335 F.3d 545, 549 (7th Cir. 2003) (revocation of parole); <u>CDI Info. Servs.</u>, 278 F.3d at 620 (denial of extension of non-immigrant visa); <u>Van Dinh v. Reno</u>, 197 F.3d 427, 434 (10th Cir. 1999) (transfer of aliens from one facility to another).

The Court of Appeals of the Ninth Circuit, on the other hand, disagrees. In <u>Spencer Enterprises, Inc. v. United States</u>, 345 F.3d 683 (9th Cir. 2003), the court held that § 1252(a)(2)(B)(ii) does not bar review of the decision to issue an immigrant investor visa pursuant to § 1153(b)(5). Although the <u>Spencer</u> court stated carefully that it "need not decide whether § 1252(a)(2)(B)(ii) applies outside the context of removal proceedings," <u>id.</u> at 692, it concluded that because section 1252(a)(2)(B)(ii) refers not to "discretionary decisions" but to "acts the <u>authority</u> for which is <u>specified</u> under the INA to be discretionary," the provision precludes review only of those discretionary decisions for which there are no guiding legal standards. <u>Id.</u> at 689 (emphasis in original). We need not reach that issue in this case nor do we reach the issue of whether section 1252(a)(2)(B)(ii) covers discretionary decisions made outside the context of removal proceedings because in this case, the IJ's finding that Tavarez was ineligible for the section 1186a(c)(4)(B) waiver resulted in a final order of removal.

**B.   8 U.S.C. § 1186a(c)(4)**

Section 1186a(c)(4) states:

**(4) Hardship waiver**

The Attorney General, <u>in the Attorney General's discretion</u>, may remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) if the alien demonstrates that— . . . .

(B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1), . . .

. . . . In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. <u>The determination of what evidence is credible and the weight to be given that</u>

7

evidence shall be within the sole discretion of the Attorney General.

8 U.S.C. § 1186a(c)(4) (emphases added).

The first paragraph of section 1186a(c) explicitly assigns to the Attorney General the discretion to "remove the conditional basis of the permanent resident status for an alien" who demonstrates one of the three qualifications for waivers that follow in the ensuing paragraphs. This statute thus falls within even the more narrow reading put forth by the Spencer court – that determinations in which "the right or power to act is entirely within [the Attorney General's] judgment or conscience . . . [and] are matters of pure discretion, rather than discretion guided by legal standards," are those exempted from judicial review by section 1252(a)(2)(B)(ii). Spencer Enters., 345 F.3d at 690. And unlike the provision the Ninth Circuit exempted from the jurisdiction-stripping effect of section 1252(a)(2)(B)(ii), section 1186a(c) states that the Attorney General may grant such a waiver, not that the Attorney General shall grant such a waiver, making clear that the waiver may not be granted even if the legal requirements of the three waiver qualifications are met. Compare 8 U.S.C. § 1186a(c), with 8 U.S.C. § 1153(b)(5). Section 1252(a)(2)(B)(ii) clearly precludes judicial review of decisions under section 1186a(c)(4).

Section 1186a(c)(4) provides the Attorney General's discretionary decision with another layer of protection from review. Not only may the Attorney General make the decision in her or his discretion, but the Attorney General has the "sole discretion" to decide "what evidence is credible and the weight to be given that evidence." § 1186a(c)(4). This is particularly relevant here because the thrust of Tavarez's argument is that "the Board failed to consider [his] objection to the manner in which the Immigration Judge evaluated the evidence." Pet. Suppl. Br. at 3-4. The IJ explicitly balanced the considerations on the record, and because that balance in this case is dispositive and impervious to review, we set forth his statements in full.

After discussion of the "best evidence for a waiver," the testimony of Sanchez and Danny Tavarez, the IJ stated:

> On the minus side of the ledger is the fact that there's virtually no documentation at all in this case to establish that this is a legitimate marriage. There's one savings account with no activity. There's no checking account. There are no joint leases, the property that the respondent bought, he apparently bought in his own name, so his wife's not on that deed. There are no affidavits from anyone familiar with the respondent or his wife. There's no evidence of co-mingling of assets. There are a few tax returns, which do suggest

8

some evidence of life together as husband and wife, but for the most part, considering that these people were married from 1992 until only about a year ago, a period of about eight years, there's nothing here to speak of and it's remarkable that there is so little in this file to show that these two people lived together.

A.R. at 40. The IJ continued:

The Court believe [sic] that the respondent's then-wife, Eladia, probably was around the house, probably was in the house at some point. She may have even lived there. The Court questions however, whether or not she was ever what one would call a wife, what one would think of as a partner. The Court also believes that her statement, which is part of Exhibit 3, is probably true in the sense that it says that she married him so that he could obtain his permanent residence and she wishes to withdraw her application but she also hopes that no harm comes to him and that he's allowed to stay in the country. That's not an unreasonable position for a person to have. There

are sometimes mixed motives behind marriages. There are different feelings. Apparently, there was a feeling of affection, friendship and concern for him but it appears also that she would not have married him but for the fact that he needed a green card and she does not allege in here or admit or concede that she ever received any money for marrying him. Apparently the Service never pressed her to make such a statement because she doesn't make one. So it appears that there was some sort of relationship, some sort of friendship but it also appears that it wasn't really a marriage. At least not what we would consider to be a marriage.

A.R. at 41.

It follows that whether we agree with the IJ's characterization of the underlying evidence as credible *vel non* which led him to conclude that this was not a good faith marriage, A.R. at 40, is irrelevant, as the statute itself gives the Attorney General (acting through his designee) the sole discretion to weigh the evidence. Courts have been zealous in their efforts to pressure our jurisdiction to review administrative decisions, but that effort must fail under the overarching reality that it is Congress that has the

9

power to decide the jurisdiction of the inferior federal courts. And IIRIRA makes plain our inability to review precisely the issue presented here, that is, the relative weight of the evidence.

Tavarez argues that "[a] strikingly similar issue of reviewability was addressed in the case of Nyonzele v. INS, 83 F.3d 975 [(8th Cir. 1996)]." Pet. Suppl. Br. at 2. The Nyonzele court noted that the hardship waiver at issue there "was initially denied by the district director," and that the "district director's denial of a hardship waiver is not itself appealable." Id. at 979. It continued, "Because the BIA reviewed the waiver claim during the deportation proceedings, that decision is reviewable in this court." Id. It also noted that because "[e]ach of [the requests for relief at issue] is a matter statutorily vested in the discretion of the Attorney General," its review was "limited to determining whether there has been an abuse of discretion." Id. Petitioner thus urges us to hear the merits of this appeal under an abuse of discretion standard.

But Nyonzele was decided before the enactment of IIRIRA. When Nyonzele was decided, the relevant jurisdictional statute was 8 U.S.C. § 1105a (1994), which gave the courts of appeals jurisdiction to review all final orders of deportation. Jurisdiction then was more broad, and as the Eighth Circuit noted, its "review of final orders of deportation pursuant to 8 U.S.C. § 1105a(a) include[d] 'all determinations made during and incident to the administrative proceeding . . . and reviewable together by the [BIA],'

Foti v. INS, 375 U.S. 217, 229 (1963), and 'all matters on which the validity of the final order is contingent,' INS v. Chadha, 462 U.S. 919, 938 (1983) (internal quotations omitted)." Nyonzele, 83 F.3d at 979. In contrast, section 1252(a)(2)(B)(ii) explicitly disallows review of discretionary decisions in the context of removal proceedings. The jurisdictional holding of Nyonzele is no longer consistent with the passage of IIRIRA.

### III.

### CONCLUSION

We hold that 8 U.S.C. § 1252(a)(2)(B)(ii) bars us from reviewing the discretionary denial of waivers under 8 U.S.C. § 1186a(c)(4). The statutory provisions that the Attorney General "in [his] discretion, may" remove the condition on permanent residence without a joint application, and that the Attorney General has the "sole discretion" to weigh the evidence and decide which evidence is credible, compel our conclusion. 8 U.S.C. § 1186a(c)(4) (emphasis added). We will therefore deny the petition for review.