NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4568
_____

JOCELYN INFANTE WAMINAL DIGENOVA,
                                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                            Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A099-230-676)
Immigration Judge: Steven A. Morley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 13, 2013

Before:  SCIRICA, VANASKIE and COWEN, Circuit Judges

(Opinion filed January 10, 2014)
_____

OPINION
_____

PER CURIAM

Jocelyn Digenova ("Digenova") petitions for review of the Board of Immigration

Appeals' final order of removal.  For the reasons that follow, we will dismiss the petition

for review in part for lack of jurisdiction and deny it in part.

Digenova, a native and citizen of the Philippines, was admitted to the United States as a non-immigrant visitor on June 23, 2004. On August 31, 2004, she married Joseph Digenova, a United States citizen. On March 4, 2006, she adjusted her status to that of a conditional lawful permanent resident on the basis of this marriage. On January 23, 2008, Digenova filed a Form I-751 Petition to Remove the Conditions on Residence, jointly with her U.S. citizen spouse.[1] On May 5, 2009, however, her lawful status was terminated based on her failure to establish that she entered into her marriage in good faith. That same day the Department of Homeland Security served her with a Notice to Appear, charging that she was removable pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(D)(i), 8 U.S.C. § 1227(a)(1)(D)(i), based on the termination of her conditional lawful permanent resident status.

On June 10, 2009, Digenova filed a second Form I-751 Petition to Remove the Conditions, this time seeking a waiver of the requirement to jointly file the petition, see INA § 216(c)(4), 8 U.S.C. § 1186a(c)(4). She claimed that the termination of her status, and her removal from the United States to the Philippines, would result in an extreme hardship to her. See id. In support of her waiver application, Digenova submitted documentary medical evidence indicating that she suffers from anemia and an iron deficiency, cervical and lumbar disc degeneration, arthritis, and allergies. She also

---

[1] An alien may obtain "conditional" permanent resident status based on her marriage to a United States citizen when the marriage was entered into less than two years prior to obtaining such status. See INA § 216(a)(1), (b)(1), 8 U.S.C. § 1186a(a)(1), (b)(1). The conditional basis of the permanent resident status can be removed if the alien and the petitioning spouse jointly file a petition requesting the removal of such conditional basis and appear for a personal interview. See INA § 216(c)(1), 8 U.S.C. § 1186a(c)(1).

provided country conditions evidence, including some reports which described health conditions in the Philippines during the 1980's and the 1990's, in support of an argument that health services for low-income persons in the Philippines are inadequate. Digenova appeared before a USCIS field officer to provide testimony in support of her Form I-75l petition. She testified that she has a four-year college degree in business administration obtained in the Philippines. Before she entered the United States, she worked as an accounting clerk in the Philippines for approximately 12 years. In the United States, Digenova worked as a billing clerk for a law firm, earning an annual salary of approximately $35,000.00.

On March 11, 2010, Digenova's waiver application was denied by the U.S. Citizenship & Immigration Service ("USCIS") for failure to show extreme hardship as required by the statute. After hearing Digenova's testimony and evidence, the USCIS field officer concluded that, because of her education and work experience, and her fluency in English and presumably Tagalog, she would be competitive in the job market in the Philippines. The field officer noted that, in determining extreme hardship under the governing regulation, 8 C.F.R. § 1216.5(e), only those factors arising after Digenova's admission as a conditional permanent resident on March 4, 2006 could be considered. Thus, the time period preceding March 4, 2006 was not relevant for purposes of establishing Digenova's extreme hardship claim. The field officer then considered Digenova's documentary evidence and found that some of it related to the time period before she obtained conditional status and was therefore irrelevant. Additionally, her other evidence did not establish a causal link between the alleged deficiencies in health

3

care services in the Philippines and her individual ability to obtain sufficient care for her health problems.

Regarding her conditions of anemia and iron deficiency, the field officer found no evidence that Digenova was currently taking any medication for these conditions or that she would be unable to obtain proper medical care for these conditions in the Philippines. Similarly, although her medical reports revealed that she has mild disc disease caused by arthritis, and that she was taking prescription and over-the-counter medication to manage her pain, she failed to submit a statement from her physician explaining that this condition could not be sufficiently managed in the Philippines. Last, the field officer concluded that Digenova's allergies did not provide a basis for concluding that she would suffer extreme hardship if removed because she did not provide any evidence that she would not be able to manage this common condition in the Philippines.

Digenova next appeared in Immigration Court in removal proceedings and requested that an immigration judge review the USCIS's denial of a hardship waiver *de novo*, as was her right. See 8 C.F.R. § 1216.5(f) ("No appeal shall lie from the decision of the director; however, the alien may seek review of such decision in removal proceedings."). On May 10, 2011, the IJ issued his decision, concluding that Digenova was removable as charged, and denying her request for a hardship waiver under INA § 216(c)(4). The IJ found that Digenova was diagnosed with cervical and lumbar disc degeneration in 2009. The pain is daily although she does not miss much work. She takes ibuprofen and a prescription medication, Gabapentin, every day to control her pain. She was advised to get follow-up care in January, 2010, but did not get that follow-up

4

care until another year had passed. At the pain management facility she attends now, she has gotten two steroid injections. She also goes to physical therapy one time a week, up to a maximum of 20 visits a year, as per her health insurance. The IJ noted that one of Digenova's medical reports showed mild disc degeneration due to arthritis.

The IJ found that Digenova presented no evidence that she had any significant allergies that would be detrimental to her in another country. Thus, he focused on the pain Digenova suffers from her cervical and lumbar disc degeneration, a condition she suffers from at a relatively young age, in determining whether her removal would cause her extreme hardship. In considering this evidence, the IJ emphasized that Digenova waited for approximately ten months between her diagnosis and physician-recommended follow-up before she actually started going for pain management treatment. Digenova claimed that she delayed her follow-up because of her concern over her mother's hospitalization in the Philippines, but the IJ emphasized that, ultimately, she had health insurance and still made a choice not to pursue medical care to resolve or alleviate her pain. Further, the IJ noted that one of Digenova's pain medications is ibuprofen, which is available over-the-counter, and presumably can be obtained in the Philippines.

Additionally, the IJ emphasized that Digenova's primary concern was that she will get to the Philippines, be unemployed, and be forced into a pay-as-you-go medical system which she would be unable to afford, but she failed to submit evidence that the Philippines has a pay-as-you-go health care system, or really any evidence whatever of the kind of health care system that exists today in the Philippines. Further, Digenova failed to present evidence that someone with her level of education and amount of work

5

experience would have difficulty finding employment in the Philippines. One university article she submitted described the Philippines as a lower middle-income country with a commitment to the evaluation of health care services, and thus her evidence did not show that the Philippines is a country that ranks at the bottom of the economic scale, such as Mali or Haiti. The IJ rejected Digenova's request to take administrative notice of the economy of the Philippines, concluding that it was Digenova's burden to show a link between the alleged deficient health care services in the Philippines and alleged poor job market on the one hand, and her individual ability to obtain sufficient care for her health problems on the other.

Digenova appealed to the Board of Immigration Appeals, contending that she had ample evidence to show that she would suffer extreme hardship if removed, and was therefore deserving of a section 216(c)(4) waiver. Digenova contended that the IJ erred in confining his review to the evidence she had previously presented to the USCIS before removal proceedings had commenced. With her appeal, Digenova submitted additional evidence in support of her hardship petition, including evidence of country conditions in the Philippines related to medical treatment, and further documentation regarding her medical conditions. Her new evidence included a chart regarding the availability of treatment in the Philippines for her particular conditions, supported by e-mail correspondence from hospitals and a specialist in the Philippines, information on cervical and sacral transformational injection procedures, a summary of Digenova's insurance claims and insurance coverage in the U.S. with her current job, information on the salary scale in the Philippines for the positions of accounting clerk, accounting staff and

6

certified public accountant/auditor, and examples of recent job postings in the Philippines. Digenova also attached the results of her August 2011 colonoscopy and EGD, further blood examinations prescribed by her gastroenterologist in September, 2011, the results of her June, 2011 cardio stress echogram, and other recent prescriptions and tests.

On February 8, 2012, the Board dismissed Digenova's appeal, agreeing with the IJ that Digenova's evidence of extreme hardship was not persuasive. The Board rejected her contention that the IJ erred by limiting the evidence to documents that were considered by the USCIS. On the contrary, the Board stated, the IJ's decision specifically noted documents that were submitted subsequent to the USCIS termination notice. To the extent that Digenova submitted new evidence on appeal, the Board additionally construed her appeal as a motion to remand. The Board noted that a motion to remand, like a motion to reopen, will only be granted if the new evidence would likely change the result in the case, citing Matter of Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992). The Board then denied Digenova's motion to remand on these grounds: (1) she did not explain why the evidence dated prior to her hearing was not available or could not have been discovered or presented at her hearing; (2) the new evidence of hardship that pertained to matters occurring outside of the relevant time period (i.e., evidence of hardship which arose after Digenova's conditional residence status was terminated) was not material; and (3) the motion did not include an affidavit from Digenova explaining how the new evidence supported her claim of extreme hardship.

Digenova has timely petitioned for review of the Board's decision. We generally have jurisdiction over petitions for review pursuant to 8 U.S.C. § 1252(a)(1), (b)(1), but we lack jurisdiction to review a challenge to the agency's discretionary denial of an application for a hardship waiver, see id. at § 1252(a)(2)(B)(ii). Section 216(c)(4) of the INA, 8 U.S.C. § 1186a(c)(4), expressly specifies that "the Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to" file a joint petition if that alien demonstrates that "extreme hardship would result if such alien is removed." The statute further provides that "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General." Id. Because this provision gives the Attorney General sole discretion to grant a hardship waiver, we held in Urena-Tavarez v. Ashcroft, 367 F.3d 154, 159-60 (3d Cir. 2004), that INA § 216(c)(4) waiver decisions are exempted from judicial review.

Despite this jurisdictional bar, we retain jurisdiction to review constitutional claims or questions of law, INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). Here, while Digenova attempts to frame her argument as one of law, she is merely arguing that the evidence she submitted showed that extreme hardship would result if she was removed. She claims that the agency erred in failing to consider the record as a whole and by limiting the evidence it would consider. See Petitioner's Brief, at 15, 18-22. An argument that the agency incorrectly weighed evidence or failed to consider evidence is not a question of law under section 1252(a)(2)(d). See Jarbough v. Att'y Gen. of U.S., 483 F.3d 184, 190 (3d Cir. 2007) (recasting challenges to factual or discretionary

8

determinations as due process or constitutional claims is clearly insufficient to establish jurisdiction under 8 U.S.C. § 1252(a)(2)(D)). Digenova's argument that the IJ was required to take administrative notice of the economic conditions in the Philippines, and argument that the IJ limited the evidence that could be considered in the hardship waiver proceedings, are nothing more than challenges to the agency's discretionary determination and are insufficient to establish jurisdiction under 8 U.S.C. § 1252(a)(2)(D). In any event, it was Digenova's burden to present evidence. The IJ may only take notice of commonly known facts such as current events or the contents of official documents, 8 C.F.R. § 1003.1(d)(3)(iv), and the employment outlook in the Philippines as it relates specifically to Digenova's qualifications and ability to find work and thus be able to afford health care, is not a commonly known fact. Similarly, the record belies any assertion that the IJ limited the evidence that could be considered.

Accordingly, we will dismiss the petition for review, in part for lack of jurisdiction. We will deny the petition for review to the extent of Digenova's motion to remand. We review the denial of a motion to reopen/remand for an abuse of discretion. See Shardar v. Att'y Gen. of U.S., 503 F.3d 308, 315 (3d Cir. 2007). The Board's decision will be upheld unless it was "arbitrary, irrational, or contrary to law." Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004) (quoting Tipu v. Immigration & Naturalization Serv., 20 F.3d 580, 582 (3d Cir. 1994)).

A motion to remand for the purpose of submitting additional evidence is treated as a motion to reopen the proceedings before the IJ. See Huang v. Att'y Gen. of U.S., 620 F.3d 372, 389 (3d Cir. 2010); Matter of Coelho, 20 I. & N. Dec. at 471 ("[W]here a

9

motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions."). A motion to reopen must be based on affidavits or other evidentiary material which were not "available and could not have been discovered or presented" at the prior hearing before the IJ. 8 C.F.R. § 1003.2(c)(1). In Digenova's case, the Board properly found that she did not explain why the evidence dated prior to her hearing on May 10, 2011 was not available or could not have been discovered or presented at that time. Furthermore, "[a] motion to reopen proceedings shall not be granted unless" the "evidence sought to be offered is material." Id. The Board properly found that the new evidence of hardship that pertained to matters that occurred after Digenova's conditional resident status was terminated was not "material" and thus did not support her motion to remand. See INA § 216(c)(4), 8 U.S.C. § 1186a(c)(4) ("In determining extreme hardship, the Attorney General shall consider circumstances occurring only during the period the alien was admitted for permanent residence on a conditional basis.").

Digenova has argued that the Board erred in rejecting her evidence of "continuing medical hardship" as immaterial. See Petitioner's Brief, at 20. She argues that, although the medical evidence provided was dated after the hearing, it related specifically to medical conditions arising during the period of conditional residence. Id. at 21. It is true, as Digenova argues, that the Board has a duty to explicitly consider material evidence submitted in support of a motion to reopen, Zheng v. Att'y Gen. of U.S., 549 F.3d 260, 268 (3d Cir. 2008), but Digenova has pointed to no specific item of material evidence she believes the Board overlooked, nor has she explained how this new evidence supports her

10

claim of extreme hardship.  Accordingly, we conclude that the Board did not abuse its discretion in denying Digenova's motion to reopen/remand.

For the foregoing reasons, we will dismiss the petition for review in part for lack of jurisdiction and deny it in part.