**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2177
_____

RISHI MALIK,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. BIA-1:A204-753-864)
Immigration Judge: Kuyomars Q. Golparvar
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 4, 2022
_____

Before: CHAGARES, <u>Chief Judge</u>, SHWARTZ, <u>Circuit Judges</u>, and PRATTER, <u>District Judge</u>.[*]

(Filed: April 6, 2022)
_____

OPINION[**]
_____

---

[*] Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Rishi Malik petitions for review of a final order of removal, arguing that the Board of Immigration Appeals ("BIA") erred in (1) refusing to permit Malik to renew his joint petition for lawful permanent residence based on his prior marriage; (2) upholding the Immigration Judge's ("IJ") requirement that Malik's counsel appear via telephone; and (3) rejecting Malik's argument that his defective Notice to Appear ("NTA") required termination of his removal proceedings. Because Malik's arguments lack merit, we will deny the petition.

I

A

Malik, a native and citizen of India, entered the United States in 2003 with his then-wife and their son. **AR1213.** Malik divorced his wife in November 2012, and in February 2013, Malik married Mary Benjamin, a citizen of the United States.

In 2013, the Department of Homeland Security ("DHS") granted Malik's and Benjamin's joint petition to adjust Malik's status to permanent resident on a conditional basis. In April 2015, Malik and Benjamin jointly petitioned to remove the condition, but in May 2016, DHS found that Malik did not have a bona fide marriage with Benjamin, denied the petition, and terminated his permanent resident status. Malik and Benjamin divorced in 2017.

B

Several days after the DHS denial, Malik received an NTA for a removal proceeding. The NTA alleged that Malik was removable from the United States because (1) he was not a citizen of the United States and had been admitted as a visitor, (2) his status was adjusted to permanent resident on a conditional basis in 2013 because he married Benjamin, and (3) his permanent resident status was terminated in 2016 because his marriage to Benjamin "was [found to be] entered into for the purpose of procuring [his] permanent residence status." AR1211-13. The NTA did not specify a time and place for the removal hearing, but Malik later received notices that provided him the date and time. .

While his removal proceedings were pending, Malik requested a hardship waiver under 8 U.S.C. § 1186a(c)(4)(B), seeking to remove the condition on his former permanent resident status without having to jointly petition with his ex-wife Benjamin. DHS denied Malik's request for a hardship waiver, concluding that he "ha[d] not met the primary factor to be eligible to file for a waiver of the requirements of [§ 1186a(c)(4)(B)]," as he failed to "provide[] sufficient evidence of a shared life together with [his] former spouse [Benjamin] for the time period immediately following the issuance of [his] conditional resident card . . . through . . . when the complaint was filed for divorce." AR116-20. DHS noted, however, that Malik "may request a review of this determination in [his] removal proceedings." AR1120. DHS amended Malik's NTA to reflect this determination as well as charged Malik with also being removable under 8

3

U.S.C. § 1227(a)(2)(A)(iii), as a result of his conviction for aggravated felonies arising from his failure to pay millions of dollars in taxes on tobacco products.[1]

During his removal proceedings, Malik asked the IJ to review DHS's denial of his hardship waiver request and submitted a renewed § 1186a(c)(1)(A) joint petition. The IJ held a merits hearing during the summer of 2020 and, due to the pandemic, Malik appeared via videoconference and his counsel appeared telephonically. The hearing lasted six hours over two days. Malik submitted exhibits and presented four witnesses.

C

The IJ denied Malik's request for a § 1186a(c)(4)(B) hardship waiver, but for reasons that differed from those proffered by DHS. The IJ found that (1) the witnesses were credible and their testimony, together with other evidence, established that Malik entered a good-faith marriage with Benjamin, but nonetheless found that (2) he "failed to establish that he merits a favorable exercise of discretion" because of his fraud conviction, JA30. The IJ also concluded that any deficiency in Malik's NTA did not warrant termination of the removal proceedings and his counsel's appearance via telephone did not violate his rights. The IJ thus ordered that Malik be removed to India.

Malik appealed to the BIA. The BIA affirmed and dismissed the appeal, concluding that (1) the IJ appropriately exercised its discretion in denying Malik a § 1186a(c)(4)(B) hardship waiver because his fraud conviction "outweigh[ed] the positive

_____

[1] Malik does not challenge this ground for removal.

4

factors of record," JA5; (2) Malik was ineligible to renew his joint petition with his former wife Benjamin because they were divorced, JA5-6 n.6 (citing Matter of Tee, 20 I. & N. Dec. 949 (BIA 1995)); (3) Malik's defective NTA did not warrant termination of the removal proceedings because he received notice of the date and time of the hearings; and (4) counsel's appearance by telephone did not violate Malik's rights since Malik did not "specify any particular communication" problems or "prejudice" as a result of his attorney's telephonic appearance. JA6-7.

Malik petitions for review.

## II[2]

Malik challenges (1) the denial of his request to renew his joint petition for removal of the condition on his former permanent resident status, (2) the requirement that his counsel appear telephonically, and (3) the sufficiency of his NTA. We address each in turn.

## A

---

[2] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction over final orders of the BIA pursuant to 8 U.S.C. § 1252(a)(1). See Garcia v. Att'y Gen., 665 F.3d 496, 502 n.4 (3d Cir. 2011). "When the BIA issues its own decision on the merits and not a summary affirmance, we review its decision, not that of the IJ." Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010). We "uphold the BIA's factual findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole," Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005), and we "review legal questions and the application of law to fact de novo with appropriate deference to the BIA's reasonable interpretation of the INA," Luziga v. Att'y Gen., 937 F.3d 244, 251 (3d Cir. 2019).

5

The BIA correctly denied Malik's request to renew his § 1186a(c)(1)(A) joint petition based on his prior marriage given the unambiguous language of § 1186a. To reach this conclusion, we review the operative statute, Malik's applications, and the decisions leading up to the BIA's ruling.

"Marriage of a[] [noncitizen] to a United States citizen entitles a[] [noncitizen] to obtain conditional permanent resident status[] [under] 8 U.S.C. § 1186a(a)(1)." Urena-Tavarez v. Ashcroft, 367 F.3d 154, 155 (3d Cir. 2004). Malik obtained this status by marrying Benjamin.

During the "90-day period before the second anniversary" of obtaining conditional permanent resident status, a[] [noncitizen] can jointly petition DHS with his spouse under § 1186a(c)(1)(A) to remove the conditional status. 8 U.S.C. §§ 1186a(c)(1)(A), (d)(2); Urena-Tavarez, 367 F.3d at 155. Among other things, the joint petition must state, "under penalty of perjury," that the "the qualifying marriage . . . has not been judicially annulled or terminated . . . and . . . was not entered into for the purpose of procuring a[] [noncitizen]'s admission as an immigrant." 8 U.S.C. §§ 1186a(c)(1)(A), (d)(1)(A)(i)(II)-(III); see also Urena-Tavarez, 367 F.3d at 155. Malik and Benjamin jointly petitioned under § 1186a(c)(1)(A) to remove Malik's conditional status. At the time they filed their petition, they accurately stated that their marriage had not been terminated.

As part of a § 1186a(c)(1)(A) joint petition, petitioners "must appear for a personal interview before an officer or employee of [DHS]." 8 U.S.C. § 1186a(c)(1)(B). Malik and Benjamin appeared for a personal interview with a DHS employee. Benjamin

6

stormed out of the interview after being shown pictures of Malik with his first wife that Benjamin thought were recently taken.

After the interview, DHS "shall make a determination . . . as to whether the facts and information . . . alleged in the petition are true," including whether "the qualifying marriage . . . was . . . entered into for the purpose of procuring a[] [noncitizen]'s admission as an immigrant." 8 U.S.C. §§ 1186a(c)(3)(A)(ii), (d)(1)(A)(i)(III). If DHS concludes that the parties entered their marriage to obtain an immigration benefit, DHS "shall . . . terminate the permanent resident status of [the] [noncitizen] spouse . . . as of the date of the determination." 8 U.S.C. § 1186a(c)(3)(C). Such termination is grounds for removal. 8 U.S.C. § 1227(a)(1)(D)(i); Urena-Tavarez, 367 F.3d at 157. DHS determined that Malik's marriage was entered to obtain an immigration benefit, terminated Malik's permanent resident status and issued an NTA alleging he was removable.

"Any [noncitizen] whose permanent resident status is terminated under [§ 1186a(c)(3)(C)] may request a review of such determination" during removal proceedings. 8 U.S.C. § 1186a(c)(3)(D). In such proceedings, the Government must show, among other things, whether the "information described . . . and alleged in the petition"—such as that "the qualifying marriage . . . has not been judicially annulled or terminated" or "was not entered into for the purpose of procuring a[] [noncitizen]'s admission as an immigrant"—"[is] not true with respect to the qualifying marriage." 8 U.S.C. §§ 1186a(c)(3)(D), (d)(1)(A)(i)(II)-(III). In other words, the noncitizen may

7

request review of DHS's determination during removal proceedings, but the noncitizen will not prevail if the Government demonstrates that the qualifying marriage has been terminated by the time the IJ reviews DHS's determination. Matter of Tee, 20 I. & N. Dec. at 951 (concluding that "by the plain meaning of [§ 1186a(c)(3)(D),] a[] [noncitizen] becomes statutorily ineligible for approval of a [§ 1186a(c)(1)(A)] joint petition upon termination of the marriage . . . before its adjudication by an immigration judge").[3]

Here, Malik requested review of DHS's denial of his joint petition and termination of his permanent resident status during his removal proceedings. The record reflects that Malik and Benjamin divorced over three years before Malik's merits hearing before the IJ. Thus, under the unambiguous text of § 1186a(c)(3)(D), a preponderance of the evidence showed that it "[is] not true" that the qualifying marriage had not been judicially terminated. The BIA therefore properly concluded that Malik was statutorily ineligible for § 1186a(c)(1)(A) relief because he was divorced at the time of review by the IJ.[4]

---

[3] Malik argues that Matter of Tee was wrongly decided and that we should not give it Chevron deference. However, because the plain text of the statute is unambiguous, and Matter of Tee did not offer an interpretation of the statute, Chevron deference does not apply. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984).

[4] The appropriate statutory route for a noncitizen who wishes to forgo the requirements of a § 1186a(c)(1)(A) joint petition (because, for example, he cannot meet the requirement that the qualifying marriage has not been terminated) is an application for a hardship waiver under § 1186a(c)(4). In Re Stowers, 22 I. & N. Dec. 605, 609-10 (BIA 1999). Malik applied for a § 1186a(c)(4)(B) hardship waiver, which DHS denied because it did not find he and Benjamin "shared [a] life together" between when he received conditional status and when they divorced. AR116-20. Malik requested review

B

The BIA also correctly concluded that Malik's statutory, regulatory, and due process rights were not violated by his counsel's telephonic participation at the merits hearing.

Malik argues that his rights under 8 U.S.C. § 1229a(b)(2)(B) and 8 C.F.R. § 1003.25(c) were violated because he did not consent to his counsel's telephonic appearance. Section 1229a(b)(2)(B) provides that "[a]n evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the [noncitizen] involved after the [noncitizen] has been advised of the right to proceed in person or through video conference." Similarly, 8 C.F.R. § 1003.25(c) provides:

> An [IJ] may . . . conduct a hearing through a telephone conference, but an evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the [noncitizen] involved after the [noncitizen] has been advised of the right to proceed in person or, where available, through a video conference, except that credible fear determinations may be reviewed by the [IJ] through a telephone conference without the consent of the [noncitizen].

Thus, these provisions concern the noncitizen's appearance by telephone and provide his counsel no entitlement to appear in person. See Akinwande v. Ashcroft, 380 F.3d 517, 522 (1st Cir. 2004) (explaining that "[t]he plain language of the regulation . . . reads [that]

---

of this determination during his removal proceedings, and the IJ and BIA both concluded that this waiver was appropriately denied. To the extent Malik seeks our review of the denial of a discretionary § 1186a(c)(4) hardship waiver, we lack jurisdiction to do so. See Urena-Tavarez, 367 F.3d at 161 ("We hold that 8 U.S.C. § 1252(a)(2)(B)(ii) bars us from reviewing the discretionary denial of waivers under 8 U.S.C. § 1186a(c)(4).").

9

. . . [t]he 'right to proceed in person' belongs to the [noncitizen] and refers to the [noncitizen]'s appearance at hearings," and the regulation only "confers on the [noncitizen] the right to appear in person" (emphasis omitted)).

Moreover, Malik's counsel's telephonic appearance did not violate Malik's due process rights. Malik has not shown "(1) that he was prevented from reasonably presenting his case and (2) that substantial prejudice resulted." Fadiga v. Att'y Gen., 488 F.3d 142, 155 (3d Cir. 2007) (quotation marks and citations omitted). His counsel was fully able to question the witnesses and present arguments to the IJ telephonically. Malik's argument that his counsel was unable to "observe and comment on [a witness's] demeanor" ignores the fact that the factfinder—the IJ—fully observed the demeanor of every witness and evaluated their credibility. In fact, the IJ found each of Malik's witnesses to have been credible. Malik has not shown that his counsel's telephonic participation prevented him from presenting his case or that he was prejudiced by his counsel's inability to visually observe the witnesses' demeanor. Thus, Malik's due process claim fails.

C

Finally, the fact that Malik's NTA lacked a date and time for his hearing does not warrant relief. First, a deficient NTA does not deprive an IJ of jurisdiction, see Nkomo v. Att'y Gen., 930 F.3d 129, 134 (3d Cir. 2019), so the NTA's omission of a date and time "alone does not require an IJ to terminate the proceedings," Chavez-Chilel v. Att'y Gen., 20 F.4th 138, 143 (3d Cir. 2021). Second, 8 U.S.C. § 1229, which requires an NTA to

10

include a date and time, "is akin to a claims-processing rule," and "there is no automatic requirement that a violation of a claims-processing rule results in the termination of a [removal] proceeding." Chavez-Chilel, 20 F.4th at 143-44. Instead, "there can be equitable reasons to excuse noncompliance with a claims-processing rule." Id. at 143. Third, a defective NTA does not warrant relief when the error is "harmless," that is, "when it is highly probable that [the NTA's deficiency] did not affect the outcome of the case." Id. at 144 (quotation marks and citations omitted).

Here, relief is not warranted because the NTA's omission of a date and time did not affect the outcome of Malik's case. Malik received an NTA that detailed the charges and then subsequent notices with the dates for hearings at which he and/or his counsel appeared.[5] Moreover, the absence of a date and time on the NTA did not "impede [his] opportunity to contest the charge[s]" and "present evidence." Chavez-Chilel, 20 F.4th at 144. Malik had a two-day, six-hour merits hearing over four years after he received his initial NTA and at which he presented hundreds of pages of exhibits and four witnesses. Because the NTA's lack of a date and time did not affect the outcome of Malik's case, his claim concerning the defective NTA fails.

### III

For the foregoing reasons, we will deny the petition.

---

[5] Malik and his counsel did fail to appear at one hearing on July 10, 2018. However, the IJ granted Malik's petition to reopen the proceedings after he missed this hearing and Malik appeared at the subsequent hearings noted above, so he cannot show that the NTA's omission of a date and time affected the outcome of his case.